UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSHUA LEVI ADAMS,                              Case No. 1:17-cv-1134

                          Petitioner,           Honorable Robert J. Jonker

v.

BONITA HOFFNER,

                          Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary

review of the petition to determine whether "it plainly appears from the face of the petition and

any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  Rule 4,

RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily

dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the

duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes

those petitions which raise legally frivolous claims, as well as those containing factual

allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir.

1999).  After undertaking the review required by Rule 4, the Court concludes that the petition

must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

I.     Factual allegations

Petitioner Joshua Levi Adams is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan.  Petitioner initially was charged with three alternative offenses arising out of his operation of a motor vehicle while drunk, causing an accident leading to death of a passenger: second-degree murder, operating a motor vehicle while intoxicated causing death, and operating with a suspended license causing death.  (Mot. to Withdraw Plea, ECF No. 1-1, PageID.99-100.) Petitioner also was charged as a third-offense felony offender, MICH. COMP. LAWS § 769.11.  On October 22, 2015, in exchange for an agreement to sentence Petitioner to a minimum sentence of 13 years and maximum sentence of 30 years and dismissal of the other charges and habitual-offender notice, Petitioner pleaded guilty in the Van Buren County Circuit Court to second-degree murder, MICH. COMP. LAWS § 750.317.  On November 16, 2015, the court sentenced Petitioner to imprisonment for 13 to 30 years.

On May 16, 2016, Petitioner, through appellate counsel, filed a motion to withdraw his guilty plea, raising three theories of why his conviction and sentence were improper:  (1) he was prosecuted under the wrong statute; (2) the prosecutor abused his charging authority; and (3) the conviction on second-degree murder was not supported by a sufficient factual basis.  (*See* Register of Action, ECF No. 1-1, PageID.52; Mot. to Withdraw Guilty Plea, ECF No. 1-1, PageID.83.)  Following a hearing held on June 20, 2016, the trial court denied the motion, holding that numerous factors set forth in the presentence report, to which Petitioner posed no objection, elevated the charge to second-degree murder, rather than operating a motor vehicle while intoxicated causing death:  Petitioner was driving on a suspended license; his

blood alcohol content was .185, over twice the legal limit; he was speeding on a gravel road during the evening hours; his car was littered with beer cans, some with beer still in them, and it contained a partially consumed whiskey bottle; Petitioner and his passengers rode without seatbelts; music was blaring from the stereo; and Petitioner previously had been involved in an alcohol-related driving crash and had been warned by his probation agent of the dangers of drinking and driving. (Mot. to Withdraw Guilty Plea, ECF No. 1-1, PageID.103-104.) Under the circumstances, the court found more than sufficient evidence to support a finding of the malice necessary to prove second-degree murder.

Petitioner sought leave to appeal to both the Michigan Court of Appeals and the Michigan Supreme Court, raising the same three grounds presented to the trial court on the motion to withdraw the plea. Those courts denied leave to appeal on July 28, 2016, and January 5, 2017, respectively.

In September 2017, Petitioner filed a motion for relief from judgment in the Van Buren County Circuit Court. In his motion, Petitioner argued two new issues: (1) his appellate attorney rendered ineffective assistance of counsel by failing to raise obvious and significant issues on appeal; and (2) his trial attorney failed to inform him of the intoxication defense to second-degree murder, rendering his guilty plea involuntary. (Mot. for Relief from J., ECF No. 1-1, PageID.123, 125.) In an order issued on October 18, 2017, the circuit court denied the motion, because Petitioner's claims had not been raised on appeal and Petitioner failed to demonstrate either cause or actual prejudice arising out of the alleged errors, since voluntary intoxication is not a defense to second-degree murder. The court further reiterated that the case involved a level of misconduct beyond that of drunk driving, given the many aggravating

circumstances showing malice.  (*Id.*, PageID.136-137.)  Petitioner has not sought leave to appeal the trial court's determination.

On December 15, 2017, Petitioner filed his habeas corpus petition.  Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner signed his application on December 15, 2017.  (Pet., ECF No. 1, PageID.14.)  The petition was received by the Court on December 27, 2017.  For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

The petition raises only the three grounds presented to the state courts on direct appeal:

I. The conviction and sentence in this case are invalid because there was no appropriate authority to prosecute and convict defendant on Second Degree Murder, Drunk Driving Causing Death was the more appropriate criminal statute, accordingly the prosecution and conviction under the Murder Second Degree statute violated Defendant's Due Process Rights.

II. The prosecution abused it[]s charging authority by selecting murder as the charged offense in this case.

III. Defendant's plea to Second Degree Murder is invalid for having an insufficient factual basis in violation of defendant's Constitutional Fifth and Sixth Amendment Rights.

(Pet., ECF No. 1, PageID.18-19.)

Upon review, the Court concludes that Petitioner's grounds for relief should be dismissed because they are either noncognizable or lack merit.

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in

light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.     Impermissible Charging and Conviction for Second-Degree Murder

In his first ground for relief, Petitioner argues that the court lacked authority to prosecute him on the charge of second-degree murder. In Ground II, he argues that the

6

prosecution abused its authority by charging him with second-degree murder. The two grounds are intertwined, and the Court will address them together.

Petitioner argues that second-degree murder, which authorizes a maximum sentence of life imprisonment, is a general offense that did not constitute an appropriate offense for the crime committed. Instead, he argues that the prosecutor should have charged him with and he should have been convicted of the more specific statute of operating a vehicle while intoxicated (OUIL), causing death, MICH. COMP. LAWS § 257.625(4), which has a 15-year maximum sentence. Petitioner contends that his criminal conduct was no more serious than that required for the lesser offense of drunk driving causing death, and he argues that, under the usual rules of statutory construction, where there exists a statutory conflict, the specific controls over the general. In the state courts, Petitioner raised his argument primarily under state law. However, he also invoked the rule of lenity set forth in *United States v. Santos*, 553 U.S. 507 (2008), which is the longstanding principle of statutory construction that "ambiguous criminal laws [are] to be interpreted in favor of the defendants subjected to them." *Id.* at 514 (citing, inter alia, *United States v. Gradwell*, 243 U.S. 476, 485 (1917); *McBoyle v. United States*, 283 U.S. 25, 27 (1931); *United States v. Bass*, 404 U.S. 336, 347-349 (1971)).

In the consolidated case of *People v. Goecke*, 579 N.W.2d 868 (Mich. 1998), the Michigan Supreme Court held that not all drunk driving cases that result in death support a trial for second-degree murder, but instead should be prosecuted under the offense of OUIL causing death, MICH. COMP. LAWS § 257.625(4). *See Goecke*, 579 N.W.2d at 880. Nevertheless, the *Goecke* court held that, where sufficient evidence exists to support the existence of malice, a charge of second-degree murder can arise from drunk driving causing death. Under Michigan law, "[m]alice is defined as the intent to kill, the intent to cause great bodily harm, or the intent

to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* at 878 (citing *People v. Aaron,* 409 Mich. 672, 728, 299 N.W.2d 304 (1980)). The *Goecke* court indicated that it was the third form of malice – the willful disregard of the likelihood that such behavior will cause death or great bodily harm – is implicated in cases such as Petitioner's. *Id.* And the court recognized that voluntary intoxication was not a defense to the crime. *Id.* The court nevertheless concluded that the circumstances in *Goecke* itself supported a charge of second-degree murder, based on facts involving a high alcohol content, an ongoing fight, and several apparently intentional attempts to drive another vehicle off the road. *Id.* at 881. More importantly, however, in another of the consolidated cases, *People v. Baker*, a charge of second-degree murder was supported by evidence that "the defendant lived within one mile of the scene of the accident, had a blood-alcohol content of 0.18 percent, drove well in excess of the speed limit, ran a red stoplight, drove through an intersection at a time when he could have seen at least three vehicles properly traveling through the intersection, narrowly missed hitting two cars before hitting the victims' car, and killed two people." *Goecke*, 579 N.W.2d at 881-82. Similarly, in the other consolidated case at issue in *Goecke*, *People v. Hoskinson*, the court found sufficient evidence of malice from the following facts:

> Defendant was highly intoxicated when he left the bar in the early evening hours. While still in the bar's parking lot, defendant twice backed into the same parked vehicle. It could be inferred that these collisions put the defendant on notice that he should not be driving. Despite such awareness, defendant drove at a high rate of speed through a residential subdivision. Having driven through this area before, defendant was aware of the speed dips in the road. He swerved to avoid hitting a car stopped at a stop sign, ran through the stop sign, and nearly hit a car driving in the opposite direction. The occupants of defendant's car advised him that he was driving too fast and that he should slow down.
>
> After colliding with a vehicle parked at the side of the road, defendant traveled across the eastbound lane, over a curb, across some grass, and struck the

victim. Defendant continued to drive along the grass and sidewalk until he finally reentered the street several hundred yards from the point of impact. Despite the fact that defendant's passengers jumped from the moving vehicle after informing the defendant that he had hit a child, the defendant proceeded to drive another several blocks before coming to a stop.

*Id.* at 882.

Relying on *Goecke*, 579 N.W.2d 868, the trial court twice rejected Petitioner's claims that he should not have been charged or convicted of second-degree murder. At the hearing on Petitioner's motion to withdraw the guilty plea, the court recited the following aggravating facts that supported a finding of malice necessary for second-degree murder:

Prosecution here had before it a person driving on a suspended license with a blood alcohol level .185, over twice the legal limit, evidence of speeding on a gravel road during evening hours, a car that smelled strongly of alcohol littered with beer cans, some with beer still in them and partially consumed whiskey bottle. There was some evidence that Defendant and his passengers rode without seatbelts and that music may have been blaring. There was motion hearing evidence that Defendant had previously been involved in an alcohol-related driving crash and that he'd been warned by his probation agent of the dangers of drinking and driving. So I cannot conclude with all of these facts that the prosecutor exceeded its appropriate charging authority in charging this as a second degree murder case.

(Mot. to Withdraw Plea, ECF No. 1-1, PageID.103-104.) Later, in denying Petitioner's motion for relief from judgment, the trial court again summarized the facts supporting a finding of malice:

An increased level of misconduct exists in this case. Defendant summarily acknowledged such in his plea proceeding. He re-affirmed the same at the sentence hearing when he verified the accuracy of the contents of the Presentence Investigation Report ("PSIR") prepared by the Michigan Department of Corrections. That report relayed several facts. It noted that Defendant had on three prior occasions been involved in the criminal court system for drinking and driving related offenses. One can infer from this that Defendant was aware of the unlawful nature of his conduct. The PSIR also relayed that Defendant's blood alcohol content was 0.185, over twice the legal limit. The passenger in Defendant's vehicle stated that Defendant was "flying down" the dirt road, the passenger "wondering why they were going so fast." Defendant was "driving erratically" and "slid off on the right side of the road several times" as his passenger urged him to slow down. The passenger estimated the speed of travel

at 70 miles per hour. Partially empty containers of alcohol were located inside the vehicle. One could reasonably infer from this that alcohol consumption was continuing to occur during the driving activity. . . . The court concludes from all of this that Defendant's decision to drive under these circumstances with two passengers is "sufficient credible evidence of probable malice to support . . . a charge of second-degree murder."

(Order Den. Mot. for Relief from J., ECF No. 1-1, PageID.136-137 (quoting PSIR and *Goecke*, 579 N.W.2d at 881).) Applying *Goecke* and the consolidated determinations in *Baker* and *Hoskinson*, the trial court held that, under Michigan law, Petitioner was properly prosecuted for and convicted of second-degree murder.

To the extent that Petitioner disagrees with the trial court's recitation and application of state law, his claim is not cognizable on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

In addition, the trial court's recitation of the supporting evidence of malice is entitled to a presumption of correctness, which may only be rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.

Petitioner makes no effort to rebut the facts recited by the court. He therefore cannot meet the obligation of showing that the trial court's determinations were either legally or factually unreasonable.

Further, any question concerning the application of the doctrine of lenity turns on whether either the second-degree murder statute or the OUIL-with-death statute is ambiguous. The state courts, however, have expressly resolved how those statutes are distinct, with second-degree murder requiring proof of willful and wanton disregard for the likelihood of death or great bodily harm. *See Goecke*, 579 N.W.2d at 878-881 (holding that, despite the existence of a described offense of OUIL with death, some drunk driving deaths may be prosecuted as second-degree murder, where circumstances are sufficiently egregious). That resolution itself resolves any ambiguity created by the existence of the two statutes. Because the state court in Petitioner's case properly recognized the types of circumstances required to elevate a drunk-driving death to second-degree murder and found that those circumstances existed, no conflict or ambiguity existed to which lenity could be applied. *See Santos*, 553 U.S. at 514 (requiring the extension of lenity when a statute is ambiguous). Because the state court's application of state law is not cognizable on habeas review, *Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76, no federal constitutional issue is implicated by the trial court's findings and determination.

More importantly, Petitioner's claims were waived by his guilty plea. It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*,

474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner's claim does not challenge the power of the state to bring him into court. Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

In order to find constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*,

411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

Here, Petitioner does not even argue that his plea was not knowing and voluntary. He does not argue that he was not competent to plead guilty or that he was coerced. Nor does he argue that he was not informed of the nature of the offense, the potential sentence he faced, or the rights he was waiving. Similarly, Petitioner does not complain in his habeas petition that his attorney rendered ineffective assistance of counsel in relation to his decision to enter a guilty plea.

Even if he did raise a challenge to the voluntariness of his plea, it would fail on the record before this Court. When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see*

*also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Here, Petitioner has provided a copy of the plea hearing transcript. A review of that transcript reveals that Petitioner was fully advised and voluntarily agreed to plead guilty to second-degree murder in exchange for an agreed minimum and maximum sentence and dismissal of the other charges and sentencing enhancements:

> MR. BLAIR [PROSECUTOR]: Your Honor, there is an agreement in the matter. The defendant will be entering a guilty plea to Count 1, murder in the second degree; Counts 2, 3 and the habitual offender notice will be dismissed at the time of sentencing. There is further an agreement in place that the defendant will serve a sentence at the minimum of 13 years with a maximum of 30 years in the Michigan Department of Corrections.
>
> THE COURT: Thank you.
> Mr. Muawad, is this your understanding of the agreement?
>
> MR. MUAWAD [DEFENSE COUNSEL]: It is.
>
> THE COURT: And, Mr. Adams, have you heard the agreement placed on the record?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Do you understand it?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Is this what you've agreed to do and do you ask that I accept this agreement?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: If you're not a United States citizen and a felony conviction enters on your record, the federal government would take steps to deport you and not allow you re-entry.
> Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Are you on anybody's probation or parole?

THE DEFENDANT:  No.

THE COURT:  By pleading guilty today, you give up forever all of the rights that you have at a trial. You also give up the right that you have to appeal your conviction and sentence to the court of appeals. Any appeal to that court would be by leave of that court, meaning you'd have to ask that court to hear your appeal and they could say yes or they could say no. Those rights are as indicated in the form called Advice of Rights form.

And, Mr. Muawad, do we have one of those filled out? If not, there should be . . . one in the podium.

(Brief pause.)

THE COURT:  Sir, I'll give you time to review that form and, if it's acceptable to you to waive or give up the rights in it, I'll have you sign it.

. . .

THE COURT: . . . Mr. Adams, have you now had the chance to review this form and sign it?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And do you understand by pleading guilty today you give up forever all of those rights?

THE DEFENDANT:  Yes, your Honor.

THE COURT: You also give up any claim that your plea today is the result of some promise or threat or inducement that's not placed on the record.

Have you been promised anything other than what you've heard us say in court today to get you to plead guilty?

THE DEFENDANT:  No, your Honor.

THE COURT:  Have you been threatened in any way?

THE DEFENDANT:  No, your Honor.

THE COURT:  Whose choice is it that you're pleading guilty?

THE DEFENDANT:  It's mine.

THE COURT:  And are you pleading guilty because you are, in fact, guilty?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  The charge you're pleading guilty to in Count 1 is called murder in the second degree.  This is a felony punishable by up to life in prison.  Do you understand the charge and its possible consequences?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did this occur on or about September 21, 2014 in Arlington Township, Van Buren County?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And did you by your actions kill Nora Hunt?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And did you commit these actions without premeditation or deliberation?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And did you commit some action in wanton and willful disregard of the likelihood that the natural tendency of your action would cause death or great bodily harm?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  What did you do?

THE DEFENDANT:  Driving a vehicle under the influence of alcohol.

THE COURT:  Okay. And this person was a passenger in your vehicle?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay. And did the vehicle crash?

THE DEFENDANT:  Yes.

THE COURT:  Okay. And that caused the death of Nora Hunt?

THE DEFENDANT: Yes, your Honor.

THE COURT: Thank you.
Counsel feel the elements of the charged offense are fully covered by his statements of fact?

MR. BLAIR: Yes, your Honor.

MR. MUAWAD: Yes, your Honor.

THE COURT: Counsel aware of any promises, threats or inducements related to the plea other than those disclosed?

MR . BLAIR: No, your Honor.

MR. MUAWAD: No, Judge.

THE COURT: Counsel believe the Court's complied with MCR 6. 302?

MR. BLAIR: You have, your Honor.

MR. MUAWAD: Yes.

THE COURT: The Court believes the plea that you've made is voluntary, understanding and accurate. I'm satisfied that there is a factual basis to support a finding of guilt, so the Court will, therefore, accept your plea. I'll do so without having considered a presentence report in this matter. I'm not bound by the agreement of the parties, but if I choose to exceed it and you've committed no misconducts between now and sentencing, you would be allowed to withdraw your plea. Okay?

THE DEFENDANT: Yes, your Honor.

(Plea Tr., ECF No. 1-1, PageID.58-64.)

As is apparent from the record, Petitioner was fully advised of the consequences of his guilty plea and the rights he was waiving at the time he entered his plea. In addition, by entering his guilty plea and stating on the record that he had committed actions in wanton and willful disregard of the likelihood that the natural tendency of his action would cause death or great bodily harm, Petitioner explicitly admitted what he now seeks to question. Under settled Sixth Circuit authority, a petitioner's responses to the trial judge, given under oath at the plea

hearing, preclude his present assertion that he did not act with the requisite malice to prove second-degree murder. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (holding that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry") (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)); *see also Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992) (holding that the petitioner's statements "estopped" him from later challenging the matters he admitted at the plea hearing); *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993) (reiterating that a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy). Because Petitioner admitted at the properly conducted plea hearing that he committed acts with the state of mind required to prove malice under Michigan law, he is barred from asserting that he should not have been charged or convicted of second-degree murder.

For all these reasons, Petitioner fails to demonstrate that the state court's denials of Grounds I and II of his petition were based on an unreasonable interpretation of the facts or were contrary to or an unreasonable application of clearly established Supreme Court precedent.

IV.     Lack of a Factual Basis for the Plea

In his third ground for habeas relief, Petitioner contends that he did not admit to sufficient underlying facts to support a conclusion that he committed more than drunk driving. The requirement that the court establish a factual basis for a guilty plea is a creature of rule, not the federal Constitution. While states are free to adopt procedural rules requiring a factual basis, as Michigan has done in Mich. Ct. R. 6.610(E)(1)(a), the Federal Constitution does not mandate them to do so. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *accord Meyers v. Gillis*, 93 F.3d 1147, 1152 (3d Cir. 1996);

*United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc) (implicitly overruled on other grounds by *Custis v. United States*, 511 U.S. 485 (1994)).

Because Petitioner's challenge to the factual basis of the plea does not implicate a federal right, his claim is strictly one of state law. As earlier discussed, it is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). As a consequence, Petitioner's third ground for relief is not cognizable on habeas review.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of*

*New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:     February 5, 2018          /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE